UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| Denslow Johnson and Aladonte Powell, individually and on behalf of all other similarly situated persons,<br><br>Plaintiffs;<br><br>v.<br><br>A-1 Quality Logistical Solutions, LLC; Complete Quality Solutions, LLC; Elite EC Logistics, LLC; Complete Quality Support, LLC; William Foster, III; and Richard Mursinna,<br><br>Defendants. | Case No.: 1:26-cv-00184-DRC<br><br>CLASS AND COLLECTIVE ACTION COMPLAINT |

## INTRODUCTION

1. For over a decade, William Foster, III; Richard Mursinna; and the companies they operate have engaged a scheme to steal wages from hardworking Americans. That sophisticated scheme includes classifying their workers as independent contractors, not paying their workers for all hours worked over 40 in a workweek, and charging them $6 per day for its Liability Insurance Program. To try to avoid liability and complying with federal and state wage and hour laws, Foster and Mursinna created A-1 Quality Logistical Solutions which enters into contracts with distribution warehouse providers across the United States. Mursinna then creates another company that signs contracts with the workers and provides the workers to the warehouse clients. However, after about a year, Mursinna shuts the company down and creates a new company, and the new company enters into a contract (which is substantially the same as the prior company's contract) with the warehouse workers.

2. Defendants' actions have cheated thousands of warehouse workers from across the country out of wages and deprived their workers of the benefits of employee status. This scheme — on the backs of their workers —has permitted Foster and Mursinna to live lives of luxury, which includes purchasing private luxury planes.
3. As a result of Defendants' illegal actions, Named Plaintiffs Denslow Johnson and Aladonte Powell ("Named Plaintiffs") bring a nationwide Fair Labor Standards Act ("FLSA") collective action on behalf of themselves and all other lumpers and order selectors who were improperly classified as independent contractors by A-1[1] and not paid overtime premium pay at the rate of time and one-half for all of their hours worked over 40 in a workweek.
4. Named Plaintiffs also bring claims under the state wage and hour laws of Alaska, Arizona, Arkansas, California, Colorado, Connecticut, the District of Columbia, Delaware, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Massachusetts, Maryland, Maine, Michigan, Minnesota, Missouri, Montana, Minnesota, Nebraska, New Hampshire, New Jersey, New Mexico, New York, Nevada, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Virginia, Vermont, Washington, West Virginia, and Wisconsin, , for failure to timely pay overtime wages.
5. Named Plaintiff Johnson also brings claims under the Virginia Minimum Wage Law, Va. Code § 40.1-28.10; and Virginia's statute prohibiting misclassification of workers, Va. Code § 40.1-28.7.

[1] A-1 is defined in paragraph xx32.

6. Named Plaintiffs seek unpaid overtime wages, liquidated and statutory damages, costs and attorneys' fees, service awards, as well as declaratory relief under the FLSA, 29 U.S.C. §§ 201, *et seq,* and applicable state laws.

## JURISDICTION & VENUE

7. Jurisdiction is conferred upon this Court by 29 U.S.C. § 216(b) of the FLSA, by 28 U.S.C. § 1331 because this action arises under laws of the United States, and by 28 U.S.C. § 1337, under Acts of Congress regulating commerce.
8. This Court has supplemental jurisdiction over the state claims raised by virtue of 28 U.S.C. §§ 1332 and 1367(a).
9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events, acts, or omissions giving rise to the claims occurred in this District and Defendants are subject to personal jurisdiction here because Defendants reside in this District.
10. Named Plaintiffs represent a class of workers engaged in foreign or interstate commerce and thus are not subject to arbitration under the Federal Arbitration Act.

## PARTIES

*Plaintiffs*

11. Named Plaintiff Denslow Johnson is resident of Virginia, and his consent to sue was filed on February 20, 2026.
12. Named Plaintiff Aladonte Powell is a resident of Mississippi, and his consent to sue is filed concurrently with the First Amended Complaint.
13. Named Plaintiffs and the FLSA collective members whom they seeks to represent ("FLSA Collective") were classified as independent contractors, worked at Defendants' customers'

warehouses as lumpers and order selectors, worked more than 40 hours in a week, and were not paid overtime premium pay at the rate of time and one-half for all hours worked over 40 in a workweek.

14. The term "Plaintiffs" as used in this complaint refers to Named Plaintiffs and any additional represented parties pursuant to the collective action provision of 29 U.S.C. § 216(b) and to such members of the class brought pursuant to Federal Rule of Civil Procedure 23, as described below, individually, collectively, or in any combination thereof.

*Defendants*

15. Defendant A-1 Quality Logistical Solutions, LLC is a for-profit Ohio corporation.
16. Defendant A-1 Quality Logistical Solutions, LLC lists its business address as 3055 Blue Rock RD, Cincinnati, OH 45239-6302.
17. Defendant William Foster, III ("Foster") is the founder and owner of A-1 Quality Logistical Solutions, LLC.
18. Upon information and belief, Foster's address is 5801 Chestnut Ridge Dr., Cincinnati, OH 45230-2500.
19. Upon information and belief, Defendants A-1 Quality Logistical Solutions, LLC and Foster created and operated numerous companies that contracted with the lumpers and order selectors. Those companies include Defendant Elite EC Logistics, LLC. Those companies also include, but are not limited to: Complete Quality Support, LLC; Elite WC Logistics, LLC; East Logistics, LLC; Western Logistics, LLC; Eastern Labor, LLC; Western Labor, LLC; and Empire Labor Services, LLC.

20. Upon information and belief, the companies identified in paragraph 19xx listed their business addresses as 3055 Blue Rock RD, Cincinnati, OH 45239-6302 or 3932 Floral Avenue, Cincinnati, OH 45212.

21. Upon information and belief, the companies identified in paragraph 19xx are or were for-profit Ohio corporations.

22. Defendant Mursinna is the registered owner of each of the companies identified in paragraph 19xx.

23. Upon information and belief, Defendant Mursinna's address is 5801 Chestnut Ridge Dr., Cincinnati, OH 45230-2500.

24. Defendant Elite EC Logistics, LLC lists its address as 3932 Floral Avenue, Cincinnati, OH 45212.

25. After approximately a year, Defendants Foster, Mursinna, and A-1 Quality Logistical Solutions, LLC dissolve the companies that they create. For example, Mursinna created Empire Labor Services in approximately December 2023, and dissolved it in approximately January 2025. Similarly, Mursinna created Elite EC Logistics, LLC and Elite WC Logistics, LLC in approximately December 2024, and dissolved it in approximately January 2026. In approximately Septmeber 2025, Mursinna created Complete Quality Support, LLC.

26. Upon information and belief, Defendants A-1 Quality Logistical Solutions, LLC; Foster; and Mursinna have at all times controlled the companies identified in paragraph xx19.

27. On approximately July 9, 2025, Defendants created the company Complete Quality Solutions, LLC. On information and belief, Complete Quality Solutions, LLC, is the successor company to A-1 Logistical Solutions.

28. Complete Quality Solutions, LLC has the same website as A-1 Quality Logistical Solutions, and the same executive and business development teams.

29. Complete Quality Solutions, LLC lists the same business address as A-1 Quality Logistical Solutions: 3055 Blue Rock Rd. Cincinnati, Ohio, 45239.

30. Complete Quality Solutions, LLC, holds itself out as having been in operation since July 2001.

31. The registered agent for Complete Quality Solutions, LLC is Gamut Consulting Group. Gamut Consulting is owned by Defendant Mursinna.

32. Collectively, "A-1" refers to Defendants A-1 Quality Logistical Solutions, LLC; Complete Quality Solutions, LLC; Foster; Mursinna; and the applicable company that contracted with each Plaintiff.

33. A-1 Quality Logistical Solutions, LLC acted as an employer of Named Plaintiff, and it continues to act as an employer of the FLSA putative collective within the meaning of 29 U.S.C. § 203(d) and under applicable state laws.

34. Upon information and belief, as founder and owner of A-1 Quality Logistical Solutions, LLC, Foster acted directly and indirectly in A-1 Quality Logistical Solutions, LLC's interest and in the interest of the other companies that contracted with Plaintiffs (i.e., Elite EC Logistics, LLC), and he acted and continues to act directly and indirectly in its interest in relation to the FLSA Collective and the State Classes. Thus, Foster is their employer within the meaning of 29 U.S.C. § 203(d).

35. Upon information and belief, Foster had authority and exercised control over the finances and operations of the various companies.

36. Upon information and belief, Foster exercised managerial authority and control over the day-to-day business of A-1 Quality Logistical Solutions, LLC, including Plaintiffs.

37. Upon information and belief, Foster and Mursinna decided that Plaintiffs should be classified as independent contractors and not employees, decided Plaintiffs' compensation, required Plaintiffs to sign agreements, and decided what deductions to make from Plaintiffs' wages.

38. At all times relevant herein, each A-1 corporate Defendant, individually and collectively, has been an enterprise within the meaning of 29 U.S.C. § 203(r).

39. At all times relevant herein, each A-1 corporate Defendant, individually and collectively, has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1) in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

40. Upon information and belief, A-1 operates in concert and together in a common enterprise and through related activities, as here relevant, so that the actions of one may be imputed to the other and/or so that they operate as joint employers within the meaning of the FLSA and Virginia's wage and hour laws.

41. Upon information and belief, A-1 is a single employer for the purposes of the FLSA and state wage and hour laws.

42. Many of the corporate A-1 Defendants or companies Mursinna and Foster created share the same business address.

43. Upon information and belief, the corporate A-1 Defendants' operations are interrelated because they work in unison to provide the services to A-1's corporate customers.

44. A-1 Quality Logistical Solutions, LLC advertises job opportunities for all of the companies.

45. The corporate A-1 Defendants' payroll is centralized, and they use the same equipment.

46. Upon information and belief, the corporate A-1 Defendants share the same management.

47. Upon information and belief, labor decisions and personnel are controlled and run by the same management personnel.

48. Upon information and belief, the corporate A-1 Defendants are controlled by Defendant Foster.

## FACTS

49. A-1 provides low-cost warehouse labor to companies across the country, including Kroger, Aldi, Frito-Lay, and PFG.

50. A-1 boasts that it has established relationships with customers across a network of over 80 locations.

51. A-1 offers its corporate customers a wide range of warehouse labor solutions. Those service offerings include order selection, put-away, auditing and quality assurance, inventory control, and management. A-1 also offers many facility support services, such as fleet washing, painting, sanitation, janitorial services, pallet repair, and yard hosting services.

52. A-1 operates or has operated in many states, including the following: Alaska, Arizona, Arkansas, California, Colorado, Connecticut, the District of Columbia, Delaware, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto

Rico, Rhode Island, South Carolina, South Dakota, Virginia, Vermont, Washington, West Virginia, and Wisconsin.

53. A-1 Quality Logistical Solutions, LLC touts the following on its website and provides the graphic below: "Our network of people spans across the United States, from coast to coast. With a wide range of locations, we are able to provide reliable and efficient services to our customers."




54. At all times relevant herein, A-1 has been an employer of its lumper and order selector workforce within the meaning of 29 U.S.C. § 203(d).

55. At all times relevant herein, Plaintiffs were individual employees of A-1 engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

56. Named Plaintiff Johnson worked in A-1's customer's warehouse in Virginia.

57. Named Plaintiff Johnson was employed by A-1 as a lumper in Virginia from approximately August 25, 2025 to December 2025.

58. Named Plaintiff Powell was employed by A-1 as an order selector in Missouri from January 2022 to December 2023 and as a lumper in California from approximately April to July of 2025.

59. Generally, lumpers unload and load A-1's customers' merchandise from the trucks, break down pallets of product, create new pallets of product, and wrap the pallets in saran wrap.

60. Named Plaintiff Johnson worked as a lumper for A-1 at AAFES Dan Daniel Distribution Center.

61. As a lumper, Named Plaintiff Johnson unloaded merchandise from assigned trucks, broke down the pallets, separated and segregated the items from the pallets, and created and wrapped new pallets to be stored within the warehouse for future shipment.

62. The products Named Plaintiff Johnson unloaded and handled were frequently delivered from other states. For example, some products were delivered from North Carolina by ARL Transport. Other products were delivered from Kentucky by TNM. On information and belief, Dan Daniel Distribution Center ships 11.3 million cases annually to military installations across 20 states.

63. Named Plaintiff Powell worked as a lumper for A-1 at a Frito-Lay distribution center in Modesto, California.

64. As a lumper, Named Plaintiff Powell created pallets of merchandise and loaded them onto trucks to be shipped to other locations.

65. On information and belief, the products Named Plaintiff Powell handled and loaded were frequently delivered to other states.

67. A-1's customers' products are delivered to the warehouses on trucks that are not owned, run, or operated by A-1, and shipped from the warehouses on trucks that are not owned, run, or operated by A-1.

66. Named Plaintiff Powell also worked as an Order Selector at Penske distribution center in St. Louis, Missouri.

67. Order selectors move, locate, stack, and count merchandise. A-1 and its customers assign order selectors to work in specific sections of the warehouse. A-1's customer communicates to the order selector the product that it needs to ship out. The order selector then travels within the warehouse to the location where the product is located, removes the product from the warehouse shelves, places the product on a pallet jack, wraps it, and ultimately drops it off at the designated location for a lumper to place on the truck.
68. Plaintiffs could not and did not run their own businesses to provide order selector or lumper work to A-1 and its customers.
69. The work that Plaintiffs performed was one of the core business functions that A-1 offered for its customers.
70. A-1 required Plaintiffs to work in A-1's customers' warehouses.
71. Plaintiffs were economically dependent on A-1.
72. Plaintiffs were required to personally perform the work that A-1 assigned to them, and they could not hire others to do it.
73. A-1 did not require Plaintiffs to have specialized skill to perform the order selector or lumper work.
74. Plaintiffs did not invest in equipment or materials to provide the order selector or lumper work.
75. A-1 and its customers provided all of the necessary tools for Plaintiffs' work, including pallet jacks, headsets, and saran wrap.
76. Plaintiffs worked alongside other warehouse workers who were classified as employees.
77. A-1 closely monitored Plaintiffs' work throughout the day through A-1's supervisors, including team leads, project managers, and operations managers.

78. A-1 paid Named Plaintiff Johnson on a per-load basis. For example, on approximately August 28, 2025 Dillon Foster informed Plaintiff Johnson that the rate to lump a load was $96. Dillon Foster texted “The payout was $96 for that load my man.”

79. When he worked as a Lumper, A-1 paid Named Plaintiff Powell on an hourly basis at a rate of approximately $28 per hour.

80. When he worked as an Order Selector, A-1 paid Named Plaintiff Powell on a production basis, at a rate of $0.15 per case.

81. A-1’s policy and practice was to deduct business expenses from Plaintiffs’ wages on each day that they worked.

82. A-1’s “Liability Insurance Program” states, “$6.00 per day will be automatically deducted from your submitted invoices. This is a set cost and will not fluctuate based on the amount of services provided each day.”

83. Upon information and belief, A-1 deducted this liability insurance business expense for each day that Plaintiffs worked.

84. As a result of this illegal business expenses deduction, Plaintiffs did not receive all of their wages, and, under the FLSA and state labor law, the business expenses must be reimbursed.

85. A-1 did not pay Plaintiffs overtime wages at the rate of time and one-half for all hours worked over 40 in a workweek.

86. For example, during the workweek inclusive of September 29 to October 3, 2025, Named Plaintiff Johnson worked between 50 and 55 hours, but A-1 did not pay him overtime wages at the rate of time and one-half for all hours worked over 40. Instead it paid him on the same per-load basis as he was paid when he worked 40 or fewer hours per week.

87. Named Plaintiff Powell regularly worked 50 to 70 hours per week, but A-1 did not pay him overtime wages at the rate of time and one-half for all hours worked over 40. Instead, it paid him on the same production basis as he was paid when he worked 40 or fewer hours per week.

88. Plaintiffs are non-exempt employees entitled to overtime wages at the rate of time and one-half the regular rate for all hours worked over 40 in a workweek.

89. A-1's failure to pay premium overtime wages for each hour worked over 40 per week was willful.

90. A-1 did not pay the Virginia Minimum Wage for all hours Virginia Plaintiffs worked.

91. For example, during the workweek inclusive of November 17 to 21, 2025, Named Plaintiff Jonson worked approximately 20 hours for A-1, but A-1 paid him only $150. Thus, A-1 paid Named Plaintiff $7.50 per hour, which is less than Virginia's minimum wage of $12.41 per hour.

92. Virginia Plaintiffs are non-exempt employees entitled to the minimum wage under Virginia law.

93. A-1's failure to pay Virginia Plaintiffs the Virginia minimum wage for each hour worked was willful.

94. In 2011, other warehouse workers who were classified as independent contractors brought FLSA unpaid overtime claims against A-1 Quality Labor Services, LLC and William J. Foster, III. The case settled on behalf of about 36 workers for $158,560.17 in back wages and liquidated damages, a $4,000 service payment to each named plaintiff, and $241,439.83 in attorneys' fees and costs. The defendants made the plaintiffs whole by paying their "full amount of the damages . . . plus full liquidated damages." *Foster et al., v. A-1 Quality Labor*

*Services, LLC and William J. Foster, III*, 1:11 Civ. 3342-JEC, Dkt. 88 (N.D. Ga. Apr. 1, 2014) (hereinafter "Georgia lawsuit").

95. At a minimum, as a result of the Georgia lawsuit, A-1 was on notice and aware of its obligations under the FLSA to classify warehouse workers, including lumpers, as employees and pay them at the proper rate of time and one-half for all hours worked over 40 in a workweek, and comply with other wage and hour laws.

96. By creating and dissolving companies on an annual basis, A-1 has created a scheme in an attempt to avoid the mandates of the FLSA. Thus, this scheme provides further evidence of A-1's willful violation.

**COLLECTIVE ACTION ALLEGATIONS**

97. Named Plaintiffs bring this case as a collective action consisting of:

> All lumpers and order selectors who A-1 classified as independent contractors and who worked within the 3 years preceding the filing of this Complaint. ("FLSA Collective.")

98. A-1 is liable under the FLSA for failing to pay all the overtime wages due to Named Plaintiffs and the FLSA Collective. Named Plaintiffs and the FLSA Collective work or have worked for A-1, were classified as independent contractors, worked as lumpers, and have been subjected to A-1's policy and pattern or practice of failing to pay premium overtime wages for all hours worked in excess of 40 hours per week.

99. Named Plaintiffs' claims for overtime pay are similar to the claims of other FLSA Collective Members, and their claims depend on similar factual and legal questions including, but not limited to, whether A-1 misclassified lumpers as independent contractors as opposed to employees; whether A-1 knew or should have known that Plaintiffs worked overtime hours;

whether A-1 failed and/or refused to pay the FLSA Collective premium overtime wages; and whether A-1's violations were willful.

100. There are many similarly situated employees who have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join it. Those similarly situated employees are known to A-1, are readily identifiable, and can be located through A-1's records. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## STATE LAW CLASS ALLEGATIONS

101. Named Plaintiffs also brings this case as a Rule 23 class action consisting of:

> All lumpers and order selectors who A-1 classified as independent contractors who worked in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Vermont, Virginia, Washington, West Virginia, and Wisconsin, at any time within the 3 years preceding the filing of the Complaint or within the applicable state statute of limitations. ("State Law Class").

102. Upon information and belief, the State Law Class is composed of more than 40 individuals. Although the precise number of such persons is not known to the Named Plaintiff, the facts on which the calculation of that number can be based are presently within A-1's sole control.

103. The members of the State Law Class and A-1's pay practices are readily identifiable from A-1's records.

104. Excluded from the State Law Class are A-1's legal representatives, officers, directors, assigns, and successors or any individual who has, or who at any time during the class period has had, a controlling interest in A-1; the Judge(s) to whom this case is assigned and any

member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Virginia Class.

105. The persons in the State Law Class are so numerous that joinder of all members is impracticable.

106. A-1 acted or refused to act on grounds generally applicable to the State Law Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the State Law Class as a whole.

107. The Second and Third Causes of Action are properly maintainable as class actions under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the the State Law Class that predominate over any questions solely affecting individual members of the State Law Class, including but not limited to:

a. whether A-1 misclassified the Named Plaintiffs and other members of the State Law Class as independent contractors;

b. whether the Named Plaintiffs and the Members of the State Law Class were employees of A-1;

c. whether A-1 made illegal business expense deductions from the wages of the Named Plaintiffs and the Members of the State Law Class;

d. whether the Named Plaintiffs and other Members of the State Law Class worked more than 40 hours in a workweek;

e. whether A-1 paid Named Plaintiffs and other Members of the State Law Class overtime wages at the rate of time and one-half the regular rate for all hours worked over 40 in a workweek;

f. whether A-1 paid Named Plaintiffs and other Members of the State Law Class the

applicable state minimum wage for all hours worked;

g. whether A-1 paid the Named Plaintiffs and other Members each the State Law Class for all the hours that they worked;

h. whether A-1 is liable for liquidated damages or other statutory damages.

108. The Named Plaintiffs will fairly and adequately represent and protect the interests of the Class that they seeks to represent. They understand that, as class representatives, they assume a fiduciary responsibility to the Class to represent their interests fairly and adequately. They recognize that as class representatives, they must represent and consider the interests of the Class just as they would represent and consider their own interests. They understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over those of the Class. They recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class. They understand that in order to provide adequate representation, they must remain informed of developments in the litigation, cooperate with class counsel by providing information and any relevant documentary material in their possession, and testify, if required, in a deposition and in trial.

109. Named Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

110. A class action is superior to other available methods for the fair and efficient adjudication of this litigation—particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant and where class members may fear retaliation by their employers. The members of the State Law Class have been damaged and are entitled to

recovery as a result of A-1's common and uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the State Law Class are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about A-1's practices.

## VIRGINIA CLASS ALLEGATIONS

111. Named Plaintiff Johnson also brings this case as a Rule 23 class action consisting of:

> All lumpers who A-1 classified as independent contractors who worked in Virginia at any time within the 3 years preceding the filing of the Complaint. ("Virginia Class").

112. Upon information and belief, the Virginia Class is composed of more than 40 individuals. Although the precise number of such persons is not known to the Named Plaintiff Johnson, the facts on which the calculation of that number can be based are presently within A-1's sole control.

113. The members of the Virginia Class and A-1's pay practices are readily identifiable from A-1's records.

114. Excluded from the Virginia Class are A-1's legal representatives, officers, directors, assigns, and successors or any individual who has, or who at any time during the class period has had, a controlling interest in A-1; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Virginia Class.

115. The persons in the Virginia Class are so numerous that joinder of all members is impracticable.

116. A-1 acted or refused to act on grounds generally applicable to the Virginia Class, thereby

making appropriate final injunctive relief or corresponding declaratory relief with respect to the Virginia Class as a whole.

117. The Fourth and Fifth Causes of Action are properly maintainable as class actions under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the Virginia Class that predominate over any questions solely affecting individual members of the Virginia Class, including but not limited to:

a. whether A-1 misclassified the Named Plaintiff and other members of the Virginia Class as independent contractors;

b. whether the Named Plaintiff and the Virginia Class Members were employees of A-1;

c. whether A-1 paid Named Plaintiff and other Virginia Class Members the Virginia minimum wage for all hours worked; and

d. whether A-1 is liable for liquidated damages or other statutory damages.

118. Named Plaintiff Johnson will fairly and adequately represent and protect the interests of the Class that he seeks to represent. He understands that, as class representative, he assumes a fiduciary responsibility to the Virginia Class to represent their interests fairly and adequately. He recognizes that as class representative, he must represent and consider the interests of the Virginia Class just as he would represent and consider his own interests. He understands that in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over those of the Virginia Class. He recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Virginia Class. He understands that in order to provide adequate representation, he must remain informed of developments in the litigation, cooperate with class counsel by providing information and any relevant documentary material in his possession, and testify, if required,

in a deposition and in trial.

119. Named Plaintiff Johnson has retained counsel competent and experienced in complex class action employment litigation.

120. A class action is superior to other available methods for the fair and efficient adjudication of this litigation—particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant and where class members may fear retaliation by their employers. The members of the Virginia Class have been damaged and are entitled to recovery as a result of A-1's common and uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the Virginia Class are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about A-1's practices.

**FIRST CAUSE OF ACTION**
**(FLSA OVERTIME)**

121. Named Plaintiffs and other members of the FLSA Collective worked in excess of 40 hours a week but did not receive premium overtime pay for all of their overtime hours.

122. A-1's failure to pay premium overtime wages to Named Plaintiffs and the FLSA Collective for all of their hours of work in excess of 40 hours per week violated FLSA, 29 U.S.C. § 207 and its implementing regulations and caused Named Plaintiffs and the FLSA Collective injury.

123. Named Plaintiffs and other members of the FLSA Collective are entitled to relief for A-1's FLSA violation, including unpaid wages, liquidated damages, prejudgment interest, costs, and attorneys' fees pursuant to 29 U.S.C. § 216(b).

124. A-1's violation of the FLSA was willful.

**SECOND CAUSE OF ACTION**
**(VIOLATION OF STATE OVERTIME LAW)**

125. A-1 failed to pay premium overtime wages to the Named Plaintiffs and State Law Class in violation of the following state laws:

- Alaska: Alaska Stat. § 23.10.060; 8 Alaska Admin. Code 15.100
- Arkansas: Ark. Code Ann. §§ 11-4-211, -218
- California: Cal. Lab. Code §§ 510, 1194; Cal. CCP 338 (1)(a)
- Colorado: 7 CCR 1103-1; Colorado Overtime and Minimum Pay Standards Orders (COMPS order) #37, #38 and #39
- Connecticut: Conn. Gen. Stat. Ann. §§ 31-68, 31-76c, 52-596
- District of Columbia: D.C. Code § 32-1003(c)
- Hawaii: Haw. Rev. Stat. § 387-3
- Illinois: 820 Ill. Comp. Stat. Ann. 105/4a
- Kansas: Kan. Stat. Ann. §§ 44-1204, -1211
- Kentucky: Ky. Rev. Stat. Ann. §§ 337.285, 337.385
- Maine: Me. Rev. Stat. Tit. 21 § 664(3)
- Maryland: Md. Code Ann., Lab. & Empl. §§ 3-415, -427
- Massachusetts: Mass. Gen. Laws Ann. ch. 151, §§ 1A, 1B, 20A
- Michigan: Mich. Comp. Laws Ann. § 408.414a

- Minnesota: Minn. Stat. Ann. § 177.25
- Missouri: Mo. Ann. Stat. §§ 290.505, 290.527
- Montana: Mont. Code Ann. § 39-3-405; Mont. Admin. R. 24.16.3016
- Nevada: Nev. Rev. Stat. Ann. §§ 17.130, 608.018, 608.040; NRS §§ 11.190, 11.220
- New Jersey: N.J. Stat. Ann. §§ 34:11-4.10, 34:11-56a4, 34:11-56a2, 34:11-58; N.J. Admin. Code § 12:56-6.1
- New Mexico: N.M. Stat. Ann. § 50-4-22
- New York: N.Y. Lab. Law §§ 198, 655; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2
- North Carolina: N.C. Gen. Stat. Ann. §§ 95-25.4, 95-25.22
- Ohio: Ohio Rev. Code Ann. § 4111.03
- Oregon: Or. Rev. Stat. Ann. § 653.261; OAR 839-020-0030
- Pennsylvania: 34 Pa. Code § 231.41; 43 Pa. Stat. Ann. §§ 260.9a, 333.104, 333.113
- Puerto Rico: 29 L of PR § 274
- Rhode Island: Rhode Island: R.I. Gen. Laws § 28-12-4.1
- Vermont: Vt. Stat. Ann. § 384
- Virginia: Va. Code §§ 40.1-29.2, 40.1-29.3
- Washington: Wash. Rev. Code Ann. §§ 4.16.080, 49.46.130, 49.48.030, 49.52.050 49.52.070
- West Virginia: W. Va. Code § 21-5C-3

126. A-1 failed to pay premium overtime wages for each hour worked over 40 in a workweek.

127. A-1's failure to comply with state overtime laws caused Named Plaintiffs and Class Members to suffer loss of wages and interest thereon.

**THIRD CAUSE OF ACTION**
**(VIOLATION OF STATE WAGE PAYMENT LAW)**

128. A-1 Failed to pay wages due in violation of the laws of the following state laws:

- Alaska: Alaska Stat. § 23.05.140;
- Arizona: Ariz. Rev. Stat. Ann. §§ 12-541, 23-351, 23-355
- Arkansas: Ark. Code Ann. § 11-4-303, -401
- California: Cal. Lab. Code §§ 204, 218, 1194
- Colorado: Colo. Rev. Stat. Ann. §§ 8-4-103, 8-4-105, 8-4-109, 13-80-102
- Connecticut: Conn. Gen. Stat. Ann. §§ 31-71b-c, 31-72, 52-596
- Delaware: Del. Code Ann. tit. 19, § 1102
- District of Columbia: D.C. Code § 32-1302
- Georgia: Georgia Code Title 34 Chapter 7 Article 2
- Hawaii: Haw. Rev. Stat. §§ 388-2, 388-11
- Idaho: Idaho Code Ann. § 45-608
- Illinois: 735 Ill. Comp. Stat. Ann. 5/13-205; 820 Ill. Comp. Stat. Ann. 115/3, 115/5, 115/14
- Indiana: Ind. Code Ann. §§ 22-2-5-1, 22-2-5-2, 22-2-9-, 34-11-2-1
- Iowa: Iowa Code Ann. §§ 91A.2, 91A.3, 91A.8, 91A.10, 91A.14, 614.1
- Kansas: Kan. Stat. Ann. §§ 44-314, -315, -324
- Kentucky: Ky. Rev. Stat. Ann. §§ 337.020, 337.055, 337.385
- Maine: Me. Rev. Stat. Tit. 26 §§ 621-A, 626-A
- Maryland: Md. Code Ann., Lab. & Empl. §§ 3-502, 3-505, 3-507.2; Md. Code Ann., Cts. & Jud. Proc. § 5-101
- Massachusetts: Mass. Ann. Laws § 148

- Minnesota: Minn. Stat. Ann. §§ 181, 181.171, 541.07
- Missouri: Mo. Ann. Stat. §§ 290.080, 290.110
- Montana: Mont. Code Ann. § 39-3-204
- Nebraska: Neb. Rev. Stat. Ann § 48-1230
- Nevada: Nev. Rev. Stat. Ann. §§ 608.016, 608.020, 608.040, 608.135
- New Jersey: N.J. Stat. Ann. §§ 34:11-4.2, 34:11-4.3, 34:11-4.10, 34:11-58
- New Mexico: N.M. Stat. § 50-4-2
- New York: N.Y. Lab. Law §§ 191, 198
- North Carolina: N.C. Gen. Stat. Ann. §§ 95-25.6, 95-25.7, 95-25.22
- North Dakota: N.D. Code Chapter 34-14-02
- Ohio: Ohio Rev. Code Ann. § 4113.15
- Oklahoma: Okla. Stat. Ann. §§ 95, 165.2, 165.3, 165.9
- Oregon: Or. Rev. Stat. Ann. § 652.120, 652.160
- Pennsylvania: 43 Pa. Stat. Ann. §§ 260.3, 260.5, 260.9a, 260.10
- Rhode Island: R.I. Gen. Laws § 28-14-2
- South Carolina: S.C. Code Ann. §§ 41-10-40, 41-10-80(C)
- South Dakota: S.D. Codified Laws § 60-11-9
- Vermont: Vt. Stat. Ann. § 21:342, 21:347
- Virginia: Va. Code Ann. § 40.1-29.2
- Washington: Wash. Rev. Code Ann. §§ 4.16.080, 49.46.130, 49.48.030, 49.52.050, 49.52.070
- West Virginia: W. Va. Code § 21-5-3

- Wisconsin: Wis. Stat. Ann. §§ 109.03, 109.11

129. As a result of A-1's violations of state wage payment laws, Named Plaintiffs and the State Law Class have suffered damages by being denied overtime wages in amounts to be determined at trial. They are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to state law.

**FOURTH CAUSE OF ACTION**
**(VIOLATION OF VIRGINIA MISCLASSIFICATION LAW)**

130. A-1 failed to accurately classify Named Plaintiff Johnson and Virginia Class Members as employees in violation of Virginia Misclassification Law, Va. Code § 40.1-28.7:7 ("VML"), which provides that "[a]n individual who has not been properly classified as an employee may bring a civil action for damages against his employer for failing to properly classify the employee if the employer had knowledge of the individual's misclassification."

131. A-1 had knowledge of the misclassification of Named Plaintiff Johnson and Virginia Class Members.

132. A-1's failure to correctly classify employees was willful within the meaning of Virginia state law.

133. At all times relevant, each Defendant has been, and continues to be, an "employer," and Named Plaintiff Johnson and each member of the Virginia Class has been, or continues to be, an "employee" within the meaning of the VML.

134. The VML, VA Code § 40.1-28.7:7 further provides that "[i]f the court finds that the employer has not properly classified the individual as an employee, the court may award the individual damages in the amount of any wages, salary, employment benefits, including expenses incurred by the employee that would otherwise have been covered by insurance, or

other compensation lost to the individual, a reasonable attorney fee, and the costs incurred by the individual in bringing the action."

135. A-1 improperly classified Named Plaintiff Johnson and the Virginia Class as non-employees rather than employees, resulting in damages to Named Plaintiff Johnson and these similarly situated employees and a denial to Named Plaintiff Johnson and these similarly situated individuals of wages, salaries, and other employment benefits including insurance coverage and insurance benefits (including unemployment insurance benefits and workers' compensation insurance benefits), employer-side payroll taxes, and other benefits which they would have been entitled to receive if they had been properly classified as employees. A-1 had knowledge of the misclassification. Named Plaintiff Johnson, for himself and similarly situated employees, seeks all relief allowed by law for A-1's violation of the VML.

136. A-1's failure to comply with state employee classification laws caused Named Plaintiff Johnson and Virginia Class Members to suffer loss of wages and other employment benefits and interest thereon.

**FIFTH CAUSE OF ACTION**
**(VIOLATION OF VIRGINIA MINIMUM WAGE LAW)**

137. A-1 failed to pay Named Plaintiff Johnson and Virginia Class Members the Virginia Minimum Wage for all hours worked, in violation of Va. Code § 40.1-28.10.

138. Defendants' failure to comply with Virginia Minimum Wage laws caused Named Plaintiff Johnson and Virginia Class Members to suffer loss of wages and interest thereon.

## RELIEF SOUGHT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter an order:

A. Certifying this action as a collective and class action under § 216(b) of the FLSA and Rule 23(b)(3);

B. Ordering notice to the putative class members at the earliest opportunity to ensure class members' claims are not lost to the State and Federal statutes of limitations;

C. Designating Plaintiffs Johnson and Powell as Class Representatives of the Classes they seek to represent;

D. Designating the undersigned counsel as Class Counsel;

E. Entering a declaratory judgment that the practices complained of herein are unlawful;

F. Declaring that the Defendants violated the Fair Labor Standards Act and applicable state wage and hour laws;

G. Declaring that Defendants' violations of overtime protections were willful;

H. Granting judgment to the Plaintiffs for their claims of unpaid wages as secured by the Fair Labor Standards Act as well as an equal amount in liquidated damages and awarding Plaintiffs' costs and reasonable attorneys' fees;

I. Granting appropriate equitable and injunctive relief to remedy A-1's violations of state law, including but not necessarily limited to an order enjoining A-1 from continuing its unlawful practices;

J. Granting judgment to the State Law Class for their claims of unpaid wages pursuant to state overtime and wage payment laws, as well as any other damages dictated by state

law, including liquidated and treble damages, and awarding the Plaintiffs' costs and reasonable attorneys' fees;

K. Granting judgment to the Plaintiffs for their claims of unpaid wages pursuant to Virginia minimum wage and misclassification laws as well as any other damages dictated by state law, including liquidated and treble damages, and awarding the Plaintiffs' costs and reasonable attorneys' fees;

L. Granting all relief allowed by the VML including "damages in the amount of any wages, salary, employment benefits, including expenses incurred by the employee that would otherwise have been covered by insurance, or other compensation lost to the individual, a reasonable attorney fee, and the costs incurred by the individual in bringing the action." Va. Code §40.1-28.7:7(A);

M. Granting pre- and post-judgment interest;

N. Granting reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it; and

O. Granting such further relief as the Court finds just

Respectfully Submitted,

Dated: July 31, 2026

/s/ *Whitney Flanagan*________________________

Whitney Flanagan, Pro Hac Vice
Matt Dunn, Pro Hac Vice
Getman, Sweeney & Dunn PLLC
260 Fair St.
Kingston, NY 12401
Tel: (845) 255-9370
Fax: (845)255-8649
mdunn@getmansweeney.com
wflanagan@getmansweeney.com

Attorneys for Named Plaintiffs and the Rule 23 Classes